**FILED**
**Jul 26, 2018**
**02:32 PM(CT)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT NASHVILLE

| | | |
|---|---|---|
| **GERALD C. COON,** | ) | |
| Employee, | ) | **Docket No. 2018-06-0018** |
| **v.** | ) | |
| **COMMERCIAL WAREHOUSE AND** | ) | |
| **CARTAGE, INC.,** | ) | **State File No. 96917-2017** |
| Employer, | ) | |
| **And** | ) | |
| **WESTFIELD GROUP,** | ) | **Judge Joshua Davis Baker** |
| Insurance Carrier. | ) | |
| | ) | |

## EXPEDITED HEARING ORDER DENYING
## REQUESTED BENEFITS

The Court convened an expedited hearing on July 10, 2018, to determine Gerald C. Coon's request for temporary disability and medical benefits. Commercial Warehouse and Cartage, Inc. (CWC) opposed the request, arguing that Mr. Coon failed to carry his burden of proving entitlement to either benefit. The Court agrees and denies Mr. Coon's request for benefits.

### Claim History

This claim concerns an alleged injury from safety equipment failure. Mr. Coon worked several jobs for CWC at its warehouse in Portland, Tennessee. One job, order picker, required him to fill orders by removing products from stacked bins reaching as high as thirty feet in the air. Mr. Coon rode a lift that elevated him to the appropriate height to retrieve products from the bins. He wore a "safety lanyard"—a harness attached to the lift—that kept him from falling. The lanyard worked similarly to a seatbelt and would lock if Mr. Coon began to fall.

Mr. Coon alleged he injured his back on September 22, 2017, when the lanyard malfunctioned by locking up and jerking his body. He reported the injury to a CWC supervisor but declined an offer of medical treatment, thinking he had only strained his

back. According to an incident report Mr. Coon completed after a previous workplace incident, he suffered from chronic back problems for thirty years prior to that incident.

Mr. Coon testified that his pain continued over the next several months and he attributed his pain to the September 22 accident. He claimed that he asked several people at CWC to see a doctor, but they denied his request.

For its part, CWC presented testimony from several witnesses, in-person and by declarations, indicating Mr. Coon neither exhibited difficulty performing his job nor requested medical care after his injury. Lisa Bayless, the CWC environmental health and safety manager, stated she "observed Mr. Coon able to perform his job duties without low back/leg pain or symptoms during the period from September 22, 2017[,] through his last day to physically work[.]" In a separate declaration, Diane Barber, Mr. Coon's direct supervisor, stated she never observed Mr. Coon having any low-back or leg problems. She further stated Mr. Coon did not request medical treatment for these conditions over the same period. Rendi Jordan, CWC's human resources director, agreed with Ms. Barber and testified she had several conversations with Mr. Coon following his alleged injury in which he never requested medical treatment.

Rick Schutte, another CWC employee, also testified that Mr. Coon never requested medical care. However, Mr. Schutte did admit that Mr. Coon complained of back pain. To mitigate this pain, Mr. Schutte moved Mr. Coon to the less strenuous job preparing parts for inventory. Mr. Coon worked this job and several others from his date of injury until November 17, the last day he worked at CWC.

On November 19, 2017, Mr. Coon experienced more severe back pain. The incident occurred when he exited the shower and reached for a towel. He went to the emergency room (ER) room, and the records from that visit noted Mr. Coon gave a history of having lower back pain and intermittent leg weakness that began about six weeks earlier while lifting a heavy box at work. He described his pain on this day as being in the same location in his back.

The ER called CWC to inquire about the accident. Ms. Jordan received the call and sent Ms. Bayless to the hospital to be with Mr. Coon. According to her declaration, "Mr. Coon stated he was sitting at home drinking coffee and watching TV when he began experiencing unbearable back pain." The ER released Mr. Coon the same day but imposed work restrictions.

On December 8, 2017, Ms. Jordan sent Mr. Coon a letter via email informing him that CWC could accommodate the restrictions. The letter invited Mr. Coon to "report to work when you feel you are able to." Mr. Coon sent a reply email indicating that other conditions not related to his alleged work injury prevented him from returning to work. CWC terminated him soon thereafter.

In early December, CWC offered Mr. Coon a panel of physicians from which he selected Portland Family Care. He saw Randy Tidwell, a family nurse practitioner, on December 11, 2017. Mr. Tidwell could not determine whether Mr. Coon's symptoms arose primarily out of and in the course and scope of his employment for CWC.[1] He noted that Mr. Coon acted in an intimidating manner when Mr. Tidwell relayed his causation opinion.

Due to the conflict with Portland Family Care, CWC offered two more panels to Mr. Coon. The physician chosen from the second panel declined to treat him. Mr. Coon then selected Concentra from the third panel and saw Dr. Robert Carver in early January. Dr. Carver diagnosed him with degenerative disc disease and lumbosacral radiculopathy. He wrote the following in his notes: "Based on a careful exam of the patient, as well as the information obtained about his job duties and mechanism of injury, it does not appear that the presenting complaints arose out of his job duties in the course of the patient performing those duties." Dr. Carver released Mr. Coon from his care and imposed workplace restrictions that "should remain in effect until seen by a spine surgeon." Dr. Carver also indicated Mr. Coon should seek treatment from a spine surgeon on his own.

Thereafter, Mr. Coon saw Dr. Chine S. Logan, a neurosurgeon, who operated on his back. Dr. Logan wrote a letter stating Mr. Coon "has a long standing history of chronic low back pain" which grew worse after a long work shift. Upon review of his symptoms, "radiographic findings" and "intraoperative observation," Dr. Logan wrote that Mr. Coon "experienced a work related aggravation of pre-existing lumbar spondylotic disease process."

CWC sought its own causation opinion from Dr. William M. Gavigan, a neurosurgeon. Dr. Gavigan reviewed Mr. Coon's records and diagnosed a lumbar strain occurring on September 22, 2017. He also diagnosed preexisting degenerative disc disease and a left disc herniation that occurred in late November, approximately two months after the date of his initial injury. He found that the lumbar strain arose from the workplace accident but the disc herniation did not.

### Findings of Fact and Conclusions of Law

Mr. Coon seeks temporary disability benefits and medical treatment. Mr. Coon need not prove every element of his claim by a preponderance of the evidence to receive these benefits through an expedited hearing. Instead, he must present sufficient evidence showing he would likely prevail at a hearing on the merits. *McCord v. Advantage*

---

[1] Mr. Tidwell, as a nurse practitioner, lacked the necessary credentials to give a causation opinion, and the Court did not consider his opinion in its determination.

*Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015). The Court holds Mr. Coon failed to carry his burden and denies his claim.

To receive benefits, Mr. Coon must show he suffered an injury "caused by a specific incident, or set of incidents, arising primarily out of and in the course and scope of employment . . . [that] is identifiable by time and place of occurrence." An injury "arises primarily out of and in the course and scope of employment" only if the "employment contributed more than fifty percent (50%) in causing the injury, considering all causes[.]" Tenn. Code Ann. § 50-6-102(14). "Except in the most obvious, simple and routine cases, the claimant in a workers' compensation action must establish by expert medical evidence the causal relationship . . . between the claimed injury (and disability) and the employment activity." *Orman v. William Sonoma, Inc.*, 803 S.W.2d 672, 676 (Tenn. 1991).

Ample proof suggested Mr. Coon had an accident at work. The witnesses generally agreed that he reported an accident on September 22, 2017. The witnesses also agreed that Mr. Coon declined medical treatment. After that, the proof diverged.

Mr. Coon claimed he continued to suffer pain from the accident, which made it difficult to do his job. He further claimed CWC declined to provide treatment when he asked for it.

CWC provided evidence contradicting Mr. Coon's assertions. According to the statements provided by Ms. Barber and Ms. Bayless, they saw no indication that Mr. Coon continued to suffer pain from the accident. They further stated that Mr. Coon never requested medical care for his condition from September 22—the date of the injury— until November 17—the last day he worked for CWC. Ms. Jordan said she spoke on a few occasions with Mr. Coon during this same period, and he never requested medical treatment for his back. Additionally, she also said she would have provided Mr. Coon treatment sooner if he had requested it. Mr. Schutte concurred with Ms. Jordan's testimony concerning that detail.

Because the parties presented conflicting testimony, the Court must decide which explanation is most plausible. This determination requires an inquiry of witness credibility. The Court finds that Mr. Coon did not present credible testimony. While testimony from a witness who is self-assured, steady, confident, forthcoming, reasonable and honest indicates reliability, *see Kelly v. Kelly*, 445 S.W.3d 685, 694-695 (Tenn. 2014), Mr. Coon appeared reluctant, argumentative and even angry in his testimony. Additionally, some of his testimony changed during the course of cross-examination in an effort to evade providing answers harmful to his case. For example when asked about riding his motorcycle on the day of a rally, he admitted riding it to get gas but denied riding any further. Only when confronted with a photo of him sitting on a bike at the rally did Mr. Coon admit he rode at the rally.

4

Conversely, Ms. Jordan and Mr. Schutte seemed reasonable and steady while on the stand. Furthermore, the documentary evidence, in particular the panels of physicians CWC provided to Mr. Coon, supported the testimony that CWC gave Mr. Coon medical care when he asked for it. Because these witnesses testified in a manner indicating honesty and reliability, and their testimony is corroborated by the documentary evidence, the Court credits Ms. Jordan and Mr. Schutte's testimony over that of Mr. Coon. In crediting their testimony, the Court holds that Mr. Coon did not ask for additional medical care until November 19, 2017.

Although Mr. Coon declined care initially, CWC provided him several panels of physicians when he finally requested treatment. In the end, three physicians provided an opinion on the cause of his back condition. Dr. Carver, a panel physician, determined that Mr. Coon suffered from degenerative disc disease and lumbosacral radiculopathy but did not causally relate those conditions to his work at CWC. He suggested Mr. Coon seek treatment for these non-work-related conditions privately and released him from care. As a panel physician, Dr. Carver's causation opinion is presumed correct. Tenn. Code Ann. § 50-6-102(14)(E). Dr. Logan, a neurosurgeon whom Mr. Coon saw privately and who operated on his back, provided a different causation opinion. He wrote that Mr. Coon "experienced a work related aggravation of pre-existing lumbar spondylotic disease process." Dr. Gavigan, a neurosurgeon from whom CWC requested a causation opinion, reviewed Mr. Coon's records and diagnosed a lumbar strain occurring on September 22, 2017. He also diagnosed preexisting degenerative disc disease and a left disc herniation that occurred in late November. He gave the opinion that the lumbar strain arose from the September workplace accident but the disc herniation did not.

In considering these three opinions and the evidence provided overall, the Court finds that Mr. Coon failed to overcome the presumption of correctness attached to Dr. Carver's negative causation opinion. Although Dr. Logan, as a neurosurgeon, has a more attended specialty to Mr. Coon's condition, his causation opinion provided little detail about what specific work activity caused Mr. Coon's problems. In the Court's opinion, the lack of any language concerning the specific workplace accident in the causation opinion—and the omission of any mention of the incident where Mr. Coon experience pain while exiting the shower—indicates that Mr. Coon failed to give Dr. Logan a complete history.

Although the Court credits Dr. Carver's opinion, the Court finds Dr. Gavigan's more detailed opinion more persuasive most persuasive. Considering his opinion in light of the lay testimony, the Court finds that Mr. Coon's compensable injury is confined to a lumbar strain. As recounted above, Dr. Coon provided Mr. Coon authorized treatment for the strain and indicated he needed no further care for this condition. The Court, therefore, holds Mr. Coon would not likely prevail at a hearing on the merits in proving entitlement to additional medical treatment for his workplace injury.

Regarding temporary disability benefits, the Court finds that Mr. Coon is not entitled to them. An employee is entitled to receive temporary total disability benefits under Tennessee Code Annotated § 50-6-207(1) whenever the employee has suffered a compensable, work-related injury that has rendered the employee unable to work. *See Young v. Young Elec. Co.*, 2016 TN Wrk Comp. App. Bd. LEXIS 41, at *11-12 (Sept. 14, 2016). Mr. Coon suffered a lumbar strain on September 22, 2017. He presented no proof that any doctor took him off of work due to the lumbar strain. The Court, therefore, finds that Mr. Coon is unlikely to prevail at a hearing on the merits for temporary disability benefits.

**IT IS, THEREFORE, ORDERED** as follows:

1. The Court denies Mr. Coon's request for temporary disability and additional medical benefits.

2. This matter is set for a status conference on Monday, August 27, 2018, at 10:00 a.m. (CDT). **The parties must call 615-741-2113 or toll-free at 855-874-0474 to participate in the Hearing. Failure to call in may result in a determination of the issues without your further participation.**

**ENTERED ON JULY 26, 2018.**

_____
**Judge Joshua Davis Baker**
**Court of Workers' Compensation Claims**

# **APPENDIX**

Exhibits:

1. Medical records
2. Mr. Coon's affidavit
3. Medical panels
4. First Report of Injury
5. Email dated January 12, 2018
6. Collections CWC business records
7. Email and letter December 8, 2017
8. Letter dated January 10, 2018
9. Accident recordation documents dated May 19, 2017
10. Accident recordation documents dated September 22, 2017
11. Email dated December 18, 2017
12. Accident recordation documents dated November 17, 2017
13. Photos
14. Rule 72 Declaration of Karen Robins
15. Rule 72 Declaration of Lisa Bayless
16. Rule 72 Declaration of Diane Barber
17. Rule 72 Declaration of Rick Schutte
18. Medical Records
19. Medical report of Dr. Gavigan dated June 21, 2018
20. Dr. Gavigan Comprehensive Report (for ID purposes only)
21. Dr. Logan letter

Technical Record:

1. Petition for benefit determination
2. Dispute certification notice
3. Request for expedited hearing
4. Mr. Coon's prehearing brief
5. CWC's prehearing brief

**CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing was sent to the following recipients by the following methods of service on July 26, 2018.

| Name | Certified Mail | Via Fax | Via Email | Addresses |
|------|----------------|---------|-----------|-----------|
| Gerald C. Coon | | | X | coon_36@hotmail.com |
| Thomas W. Tucker, III | | | X | tomtucker@bellsouth.net |

_____
Penny Shrum, Court Clerk
Court of Workers' Compensation Claims
Wc.courtclerk@tn.gov